UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Piper Sandler & Co., | Case No. 0:23-CV-2281 |
| Plaintiff, | |
| v. | DECLARATION OF BENJAMIN BECKER |
| Constanza Gonzalez, | |
| Defendant. | |

I, Benjamin Becker, state as follows:

1. I am the Senior Vice President of the Special District Group of Piper Sandler & Co. ("Piper"). I am based out of Piper's Salt Lake City, Utah, office. I submit this declaration in support of Plaintiff's Motion for a temporary restraining order and preliminary injunction.

2. Davidson is a competitor of Piper. Davidson offers similar services to clients, and similar to Piper, has an office in Salt Lake City, Utah. Piper and Davidson are the two biggest players in the Utah market. Over the last few years, Davidson's Utah office has actively recruited employees and clients from Piper's Utah office.

3. Based on my experiences, I believe Davidson uses disparaging comments regarding Piper in order to recruit potential and current Piper employees.

4.  Before joining Piper, I worked at Zions Bank, a regional bank, but I was recruited by Davidson. As part of Davidson's recruiting pitch, Brennen Brown, the Managing Director of Davidson's Utah office, told me that Piper employees had engaged in illegal and unethical conduct, that everything needs to be done to keep Piper out of the market, and that Piper's employees disregard all morals and virtues. After actually meeting Piper's employees, including the employees that Brown disparaged the most, I knew that Brown's comments were false, and I decided to join Piper.

5.  After I announced my decision to join Piper, Davidson's Utah office reached out to me again to offer disparaging comments regarding Piper and its employees.

6.  Then, after working at Piper for more than a year, Brown invited me to Davidson's office to discuss upcoming legislation. When I arrived at Davidson's office, it became clear that Davidson did not intend to discuss legislation but instead wanted another opportunity to convince me to join Davidson. During this conversation, Brown and two other Davidson principals from Davidson's Denver office again made disparaging comments about Piper and its employees in an effort to convince me to join Davidson.

7. Gonzalez told Piper employees that she was going on vacation from June 13 through June 16, but Gonzalez told three different stories to three different Piper employees as to her vacation plans.

8. The information that Gonzalez accessed and later printed is extremely valuable to Piper. Many of the files that she accessed and printed fall outside the scope of her normal job duties.

9. On June 26, 2023, Mike Sullivan, a fellow Piper employee, received a phone call from Aaron Wade who serves as Piper's deal counsel on bond deals. During this conversation, Mr. Wade informed Mike Sullivan that he had just participated in a call with Gonzalez, who was at Davidson's office. The purpose of the call was to discuss a potential project. Mike Sullivan informed me of the call he received from Aaron Wade.

10. On June 27, 2023, I received a call from a potential client. During this conversation, the potential client informed me that Davidson was now being considered for the project because Davidson believed it had a better financing model than Piper. It was clear that Davidson knew the confidential financing model that Piper had prepared for this client and was trying to convince the client that Davidson's model was better. Gonzalez had accessed and printed the Piper financing model that Davidson was using.

11. On June 27, 2023, Gonzalez attended an Urban Land Institute ("ULI") Young Leaders event, held at Davidson offices, and introduced herself as a Davidson employee. At the event, Gonzalez approached a current Piper client and expressed her desire that he will work with Davidson. On June 28, 2023, the Piper client contacted me to inform me of his interaction with Gonzalez. Gonzalez had been in contact with this client while employed at Piper.

12. On June 28, 2023, a separate client told me that Davidson has a copy of Piper's financing model. With Piper's financing model in hand, Davidson told the client that the bonds that Piper intended to sell as part of the plan were unsaleable. The client decided to switch from Piper to Davidson. Piper expected this client/project to be worth close to $1 million for Piper. Gonzalez had been in contact with this client while employed at Piper.

13. On July 21, 2023, I received an email from a potential client that was sent to Gonzalez. After Gonzalez left Piper, all of her Piper emails were forwarded to my email. From the email, it appears as though the client intended to send the email to Gonzalez at her Davidson email but mistakenly sent it to Gonzalez's Piper email address. The client was providing information to Gonzalez relating to a potential project. Gonzalez had been in contact with this client while employed at Piper. Attached as **Exhibit 1** is a true and correct copy of this email.

14. Piper has been irreparably harmed by Gonzalez's violations of her restrictive covenants. Piper will continue to be irreparably harmed if the court does not enjoin Gonzalez.

I swear under penalty of perjury that everything that I have stated in this Affidavit is true and correct.

Executed this 31st day of July, 2023, in the City of Salt Lake City, Salt Lake County, State of Utah.

s/ *Benjamin Becker*
Benjamin Becker