# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Piper Sandler & Co.

      Plaintiff,

v.

Constanza Gonzalez,

      Defendant.

Case No.  0:23-CV-2281

**[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

This matter came on for hearing before the undersigned on _____, 2023, upon the motion of Plaintiff Piper Sandler & Co. ("Piper") for a Temporary Restraining Order and Preliminary Injunction against Defendant Constanza Gonzalez ("Gonzalez"). Appearances were noted on the record.

The Court having reviewed the submissions made on behalf of the parties, having heard the arguments of counsel, and being fully advised in the premises, makes the following:

## FINDINGS OF FACT

1.    Defendant Constanza "Connie" Gonzalez ("Gonzalez") worked as a Public Finance Investment Banking Associate at Plaintiff Piper Sandler & Co. ("Piper") from January 3, 2022 to June 22, 2023. Gonzalez's employment offer from Piper was contingent upon her agreeing to the terms stated within her Offer

Letter. Gonzalez executed the Offer Letter on December 21, 2021, and thereby

agreed to its terms.

2.      The Offer Letter contained non-solicitation and confidentiality

provisions. Relating to the relevant restrictive covenants, the Offer Letter states:

> **Non-Solicitation of Clients**
> For ninety days following the termination of your employment for any reason, you agree that you will not directly or indirectly, solicit or assist in the solicitation of Piper Sandler's investment banking or capital market clients or prospective clients with whom you have had any contact in the twelve months preceding the termination of your employment. This provision will apply to any geographic area in which Piper Sandler (i) has engaged in business during your employment with Piper Sandler through deal transactions, merger and acquisition advisory services, marketing or otherwise, or (ii) has otherwise established its goodwill, business reputation or any client relations. You acknowledge and agree that this non-solicitation agreement is necessary to protect Piper Sandler's legitimate business interests, and that the compensation that Piper Sandler has offered to you in this letter is sufficient consideration for this non-solicitation agreement. By signing this letter you voluntarily elect to receive and accept the terms and conditions of this paragraph and acknowledge and agree that they are fair and reasonable under the circumstances.

> **Confidential Information and Unfair Competition**
> You recognize that any knowledge or information of any type whatsoever of a confidential nature relating to the business of Piper Sandler or any of its parents, subsidiaries or affiliates, including, without limitation, all types of trade secrets, client lists or information, employee list or information, information regarding product development, marketing plans, management organization information, operating policies or manuals, performance results, business plans, financial records, or other financial, commercial, business or technical information (collectively, "Confidential Information"), must be protected as confidential, not copied, disclosed or used other than for the benefit of the Company at any time, unless and until such knowledge or information of the Company that became or becomes a matter of public record through no fault, act or omission of

yours, or information developed by and/or already in your possession without confidentiality restrictions. You further agree not to divulge to anyone (other than the Company or any of its affiliates or any persons employed or designated by such entities), publish or make use of any such Confidential Information without the prior written consent of the Company . . . . You further agree that all such information, documents and records are and shall at all times remain the sole and exclusive property of Piper Sandler and at the cessation of your employment you shall not retain and shall return to the Company any tangible property, documents or like material assigned to you by the Company or prepared by you during your employment including all copies thereof. You acknowledge that your failure to comply with the provisions set forth herein would constitute unfair competition.

3.      In addition to agreeing to the restrictive covenants above, Gonzalez

agreed that the restrictive covenants were reasonable and agreed to in exchange

for valuable consideration:

You acknowledge and agree that the covenants and obligations with respect to the provisions titled Non-Solicitation of Clients, Non-Solicitation of Employees, Confidential Information and Unfair Competition (collectively, the "Restrictive Covenants") relate to special, unique and extraordinary services rendered by you to the Company and that the Company has provided valuable consideration to you in exchange for your agreement to be bound by the Restrictive Covenants.

4.      In the Offer Letter, Gonzalez agreed that any violation of the

restrictive covenants would cause Piper irreparable harm and therefore entitle

Piper to injunctive relief:

You further acknowledge and agree that a violation of any of the material terms of the Restrictive Covenants by you will cause the Company to suffer irreparable injury for which adequate remedies are not available at law and damages would be difficult to ascertain and speculative. Therefore, if you violate or threaten to violate any of the material terms of the Restrictive Covenants you agree that the Company shall be entitled to

3

an injunction, restraining order or such other equitable relief (without the requirement to post bond) restraining you from committing any violation of the Restrictive Covenants.

5.      On June 13, 2023, Gonalez applied to D.A. Davidson Companies ("Davidson"). Davidson is a competitor of Piper.

6.      On June 16, 2023, Gonzalez accessed Piper's confidential database and strategically reviewed confidential documents. The confidential documents contained highly sensitive and valuable information relating to Piper's business, including business development tracking summaries, client presentations, and specific financial modeling plans including plans for projects and clients for which Gonzalez had no involvement. Gonzalez also reviewed confidential documents relating to clients with whom she regularly contacted while employed at Piper.

7.      The next day, Saturday, June 17, 2023, Gonzalez went into Piper's office and printed the same confidential documents that she had reviewed the day before. Gonzalez never disclosed her actions, including reviewing and printing the documents, to Piper.

8.      Piper only learned of Gonzalez accessing and printing after it conducted an internal forensic review of Gonzalez's devices after she joined Davidson.

9.      Gonzalez resigned from Piper on June 22, 2023.

4

10.     Gonzalez started at Davidson a few days later on June 26, 2023. Gonzalez had Piper's confidential information in her possession when she started at Davidson.

11.     Immediately upon joining Davidson, Gonzalez began soliciting Piper's clients, including clients with whom she had contacted within the 12 months preceding her resignation from Piper.

12.     Piper learned of Gonzalez soliciting its clients through the clients themselves as well as written correspondence between Gonzalez and at least one client.

13.     When soliciting Piper's clients, Gonzalez was using the confidential information that she had accessed and printed shortly before resigning from Piper.

14.     After discovery Gonzalez's misconduct, Piper immediately contacted Davidson to inform Davidson of Gonzalez's misconduct. In response, Gonzalez, through Davidson, signed an attestation claiming that she had deleted the confidential documents she had stolen from Piper. Gonzalez also claimed that she never used the information and never solicited Piper's clients.

15.     After Piper received Gonzalez's attestation, Piper discovered evidence showing that Gonzalez continued to violate her restrictive covenants.

16.     On August 2, 2023, Piper filed this action against Gonzalez and
moved for a temporary restraining order (TRO) and preliminary injunction to
enforce the restrictive covenants in the Offer Letter. Piper also simultaneously
filed a statement of claim against Gonzalez in FINRA arbitration in order to
obtain a permanent injunction.

## CONCLUSIONS OF LAW

1.     The Court has the power to enter a TRO and preliminary injunction
enforcing the restrictive covenants in the Offer Letter, even though the parties'
dispute will ultimately be arbitrated in FINRA. *See* FINRA Rule 13804(a); Minn.
Stat. § 572B.08.

2.     In deciding whether to issue a TRO or preliminary injunction, the
Court must weigh the following four *Dataphase* factors:

(1)     irreparable harm to the plaintiff if the injunction is denied;

(2)     the harm to the defendant if the injunction is entered;

(3)     the likelihood the plaintiff will succeed on the merits of its claims;
and

(4)     the public interest in the dispute.

*Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *see also*
*Jackson v. Nat'l Football League*, 802 F. Supp. 226, 229 (D. Minn. 1992) (applying the
same factors to a TRO).

3.      The first *Dataphase* factor – irreparable harm – supports Piper's

requested TRO and preliminary injunction. Minnesota federal and state courts

infer that a company is irreparably harmed when a former employee breaches

his or her non-solicitation or confidentiality agreement.  *St. Jude Med., Inc. v.

Carter*, 913 N.W.2d 678, 685 (Minn. 2018) ("Yet there are circumstances in which

it may be appropriate for a district court to infer irreparable harm. We have

recognized that these circumstances include situations where customer good will

is at stake, when an employee takes business secrets with an intent to benefit

from the secrets, or when a risk exists that the secrets will be disclosed in the

subsequent employment and result in irreparable damage."); *Gibbons*, 527 F.

Supp. at 1091; *Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844, 845 (Minn. 1964);

*Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 452 (Minn. Ct. App.

2001); *Liberte Const., LLC v. Zaabri*, 2017 WL 9438456, at *7 (Minn. Dist. Ct. Oct. 26,

2017) (granting preliminary injunction due to violations of non-solicitation and

confidentiality provisions). Such an inference is appropriate here because, if

Gonzalez is allowed to violate her restrictive covenants, she could irreparably

harm Piper by taking its clients and further disclosing its confidential

information. Gonzalez is in a unique position to take Piper's clients because she

recently accessed, printed, and stole Piper's confidential information and has

previously contacted many of Piper's clients and prospective clients. When she

signed the Offer Letter, Gonzalez expressly acknowledged that violating her restrictive covenants would constitute unfair competition and irreparably harm Piper.

4.      The second *Dataphase* factor – balance of harms - also justifies injunctive relief here. The harm to Piper outweighs any harm Gonzalez could claim from being required to abide by the restrictive covenants in the Offer Letter.

5.      The third *Dataphase* factor – likelihood the plaintiff will succeed on the merits of its claims – supports Piper's proposed TRO and preliminary injunction. The evidence is sufficient that the restrictive covenants are valid. And Gonzalez has already breached the confidentiality and non-solicitation provisions of the Offer Letter. The evidence even shows that Gonzalez continues to breach the covenants after Piper raised her violations with her and Davidson. Piper has shown a likelihood of succeeding on its breach of contract claim against Gonzalez.

6.      The fourth *Dataphase* factor – public policy – favors enforcing the restrictive covenants.

## ORDER

Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is GRANTED as follows:

A.      Enjoining Defendant Connie Gonzalez, for 90 days from the date of the Court's Order, from soliciting any Piper client or potential client with whom Gonzalez had contact within the last 12 months of her employment at Piper;

B.      Enjoining Gonzalez from disclosing, using or misappropriating any confidential information of Piper Sandler & Co.; and

C.      Enjoining Gonzalez to provide, unaltered, all devices she has used from the start of her employment with Piper on January 3, 2022 to the present so that Piper may have an independent forensic examiner review the devices and, if necessary, scrub the devices of all Piper information.

2.      Piper shall not be required to post a bond for this Temporary Restraining Order and Preliminary Injunction, in part because Gonzalez agreed in the Offer Letter that Piper is entitled to injunctive relief to enforce the Offer Letter without a bond.

3.      This Order shall be effective immediately.

4.      The injunctive relief set forth in this Order shall remain in effect until such time as the Court otherwise directs.

**IT IS SO ORDERED.**

                                                          **BY THE COURT:**


Dated: _____, 2023          _____
                                                          District Court Judge

9