**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Piper Sandler & Co.

Plaintiff,

v.

Constanza Gonzalez,

Defendant.

Case No. 0:23-CV-2281

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## INTRODUCTION

In its Motion, Piper Sandler & Co. ("Piper") seeks to obtain an order against Constanza Gonzalez ("Ms. Gonzalez") for alleged violations of the post-employment restrictive covenants ("Restraint") provisions of an employment contract ("Contract").

Piper's Motion should be denied because it is based on the faulty premise that irreparable harm exists in this case. Piper's claims concern the alleged loss of an engagement and fees which would have been earned from that engagement. This is monetary loss which can be addressed in monetary damages. For that reason alone, the Motion should be denied in its entirety.

This Motion seeking an injunction against "solicitation" should be denied because: (i) "solicitation" is insufficiently defined; (ii) Piper has not shown a reasonable likelihood of success or a need for an injunction against "solicitation" under the usual meaning of the word; and (iii) Piper has not shown a reasonable likelihood of success or a need to expand

the "solicitation" Restraint period beyond the language of the Contract and beyond the status quo.

The portion of Motion seeking an order "enjoining [Ms. Gonzalez] to provide, unaltered, all device used from the start of her employment with Piper on January 3, 2022 to the present so that Piper may have an independent forensic examiner review the devices and, if necessary, scrub the devices of all Piper information" does not "enjoin" anything. Instead, it seeks to impose an extraordinary burden on Ms. Gonzalez and goes far beyond simply maintaining the status quo. Piper has not shown a reasonable likelihood of success or a need for an "injunction" requiring Ms. Gonzalez to turn over electronic devices, which is not required by the language of the Contract, is beyond the status quo, and would unnecessarily interject this Court into a cumbersome procedure by which the devices would be examined and "scrubbed" if necessary.

## FACTUAL BACKGROUND

From January 2022 to June 2023, Ms. Gonzalez was an associate level employee at Piper. (Declaration of Constanza Gonzalez ("Gonzalez Decl.") at ¶3). Throughout that time, she worked in the Utah Special Districts Group of Piper, which did not close a single client project. (Gonzalez Decl. ¶6(3-6)).

On or about June 22, 2023, Ms. Gonzalez resigned from Piper to join her current employer D.A. Davidson & Co. ("Davidson"). (Gonzalez Decl. ¶5). Gonzalez left Piper because (among other reasons), the Utah Special Districts Group of Piper had not closed any projects and Piper was not making appropriate efforts to improve their culture, environment, or compensation of the office. (Gonzalez Decl. ¶5 (Benj Paragraph 3-6)).

On or around June 26, 2023, Ms. Gonzalez was physically in an office at DA Davidson with a more senior employee, Sam Elder ("Sam"), when Sam got on a phone call with Aaron Wade ("Aaron"). Aaron is an attorney who does work for both Piper and for DA Davidson. Ms. Gonzalez was not involved with the project that Sam and Aaron discussed. But at the end of the phone call, Sam let Aaron know that Ms. Gonzalez had transitioned from Piper to DA Davidson and they exchanged pleasantries. (Gonzalez Decl. ¶6 (Benj Paragraph 9)). This exchange will be referred to as the "Aaron Incident."

On June 27, 2023, Ms. Gonzalez attended an event for the Urban Land Institute ("ULI"), a non-profit organization. Ms. Gonzalez is the board chair of the Young Leaders Group ("YLG") of the ULI. of a non-profit organization, Urban Land Institute ("ULI"). Another member of the ULI ("Jordan"), was hosting the event at the office of his employer, Gardner Group ("Gardner"). To Ms. Gonzalez's knowledge, Gardner had previously engaged Davidson for at least one prior project but had never engaged Gardner on anything. But she understood that Gardner was a potential target prospect for both Davidson and Piper. Jordan hosted a ULI event at the Gardner office. During the event, Scott MacMeekin ("MacMeekin") another Gardner employee asked Ms. Gonzalez if Davidson could handle a CPACE project. Gonzalez told MacMeekin that she did not know but would find out and get back to him. She followed up with MacMeekin to request additional information necessary to get that answer. Since that time, she has been largely uninvolved in discussing the project and does not know whether Davidson will be engaged for it or not. During the exchange, Ms. Gonzalez did not ask for or request that Gardner seek out business with

Davidson. (Gonzalez Decl. ¶6 (Benj Paragraph 11&13))**.** This exchange will be referred to as the "ULI Incident."

On June 30, 2023, Piper sent a letter demanding that Ms. Gonzalez destroy certain documents that she had printed prior to her resignation (the "Printouts")[1]. (Gonzalez Decl. ¶5). In response, Ms. Gonzalez did, in fact, shred the Printouts. (*Id.*) Ms. Gonzalez never shared any information from the Printouts or any other information from Piper with Davidson. (*Id.*)

Ms. Gonzalez is a low-level employee at Davidson. Ms. Gonzalez has not been involved in any discussion with any client comparing financing models of Piper and Davidson. Nor has she shared or shown any financing models, Printouts, or other information from Piper to anyone at Davidson. In fact, none of the work Ms. Gonzalez has done with Davidson has been during the proposal stages of projects. All work that she has performed has been on projects where Davidson had already been engaged. (Gonzalez Decl. ¶6 (Benj Paragraph 10 &12))

Ms. Gonzalez acknowledges that her Contract with Piper contains the Restraint, a ninety (90) day "non-solicitation" provision which purports to prevent her from soliciting Piper clients with whom she had contact in the last twelve (12) months of her employment with Piper. Ms. Gonzalez, however, does not have any agreement with Piper which

[1] Some of the material printed by Ms. Gonzalez consisted of public data while others were personal such as an assessment of her strengths. Other documents were template forms which did not contain confidential information and were not proprietary to Piper. Other documents such as "missionary advice" have nothing to do with the investment banking or public finance business of Piper. Regardless of whether Ms. Gonzalez was entitled to print and access the information, the level of harm created by her doing so is not as grave as suggested by Piper.

prevents her from working for a competitor of Piper. Ms. Gonzalez was entitled to resign from Piper and begin working for her current employer Davidson and to provide services to Davidson's clients even if those clients happen to also be Piper clients with whom she had contact in her last year with Piper.

## ARGUMENT

### I. PIPER HAS NOT SUFFERED, AND WILL NOT SUFFER ANY HARM—MUCH LESS IRREPARABLE HARM

To obtain an injunction, Piper must prove with actual evidence that irreparable harm will result if injunctive relief is not immediately granted and that such harm cannot be compensable by money damages. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) (it is "well settled that economic loss does not . . . constitute irreparable harm"). This case is about alleged customer losses and money damages—which by Piper's own admission are ascertainable—so an injunction is unwarranted.

#### A. Piper Has Not Described Any Alleged Irreparable Harm in Sufficient Detail to Warrant Granting Preliminary Injunctive Relief

Ms. Gonzalez's limited interactions with clients at Davidson does not demonstrate that the threat of irreparable harm is present in this matter. Piper's failure to show actual irreparable harm it has suffered or will suffer from Gonzalez's alleged actions is fatal to its Motion. *See, e.g., Packard Elevator*, 782 F.2d at 115 (to show irreparable harm "the injury must be both certain and great; it must be actual and not theoretical"); *City Cycle IP, LLC v. Caztek, Inc.*, 2012 WL 3656443, at *4 (D. Minn.) (denying request for injunctive relief when claimed injuries "are entirely speculative and without evidentiary support"); *CHS,*

*Inc. v. Petronet, LLC,* 2010 WL 4721073, at *3 (D. Minn.) ("The failure to show irreparable harm is an independently sufficient ground upon which to deny injunctive relief."). This Court cannot restrain Gonzalez's livelihood based on Piper's unsupported fears of potential future nonspecific damage. *See Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 871 (D. Minn. 2015) ("The Court will not use an injunction simply to eliminate a possibility of a remote future injury, or a future invasion of rights or to allay Katch's fears and anxieties about Sweetser working for MediaAlpha." (quotations omitted)); *Hollenkamp v. Peters*, 358 N.W.2d 108, 111 (Minn. App. 1984) ("An injunction will not issue to prevent an imagined injury which there is no reasonable ground to fear. The threatened injury must be real and substantial."); *see also St. Jude Med. Inc. v. Carter,* 913 N.W.2d 678, 685 (Minn. 2018) (noting Minnesota courts "are cautious about enjoining former employees due to the risk of constraining their ability to make a living").

Because Piper's irreparable harm argument hinges impermissibly on theoretical harm, which is not actual, certain, or great, the Motion must be denied.

While Piper states Ms. Gonzalez's job responsibilities included "business development" and that she met "with clients and prospective clients," she was not the primary contact for Piper's clients. With only a few exceptions, she did not get engaged with Piper's clients until after the client project had already been secured. Ms. Gonzalez certainly could not be described as the "face" of Piper. To the contrary, nothing suggests that she played any substantial role in the client's decision to choose Piper for any project. Indeed, while Ms. Gonzalez disputes the characterization, Piper's position is that Ms. Gonzalez "hurt Piper's brand." (DOC No. 9, Declaration of Zachary Bishop at ¶5.)

Davidson also did not hire Ms. Gonzalez to become its face in soliciting business from prospective clients. Since her hire at Davidson, Ms. Gonzalez has not been on a single team presenting a client pitch. Except for the Gardner example discussed above, Ms. Gonzalez does not believe she has interacted with any client about any project until after the client had already retained Davidson for that specific project. Ms. Gonzalez certainly was not the "face" of Piper with respect to prospective clients. *See Midwest Sign & Screen Printing Supply Co.*, 386 F. Supp. 3d at 1056 (plaintiff did not meet burden of showing irreparable harm in part because it failed to present evidence showing that defendant was the "face" of the company). Nor does Ms. Gonzalez view anything that she has done to constitute "solicitation" as that term is normally used.

**B. Even If Piper Could Show Ms. Gonzalez's Action Harmed or Will in the Future Harm Piper, Monetary Damages Would Provide an Adequate Remedy**

When a plaintiff's damages can be adequately remedied by monetary damages, there is no irreparable harm. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages"); *Packard Elevator*, 782 F.2d at 115. Moreover, the alleged loss of a customer (and, hence, that customer's business) does not constitute irreparable harm, as any such alleged losses can be quantified and redressed through money damages, if at all. *See Wells Fargo Ins. Servs. USA, Inc. v King*, 2016 WL 299013, at *8 (D. Minn.).

Piper grounds its irreparable harm arguments entirely on the speculation of losing clients, which is nothing more than financial harm that is easily repaired through

money. As the Court recently held in a similar customer non-solicit case involving a financial services sales representative:

> First, this case is about money. No historic building is going to be destroyed. No toxins are going to be released into the environment. No ship is going to leave port, never to return. King stole clients away from WFI, and the main harm that WFI suffered is lost profits on the business of those clients. By definition, lost profits are "reparable" through money damages.
>
> Second, it appears that WFI should easily be able to identify the lost clients and quantify the lost profits. . . . Presumably, WFI can easily identify which clients followed King to Sherman and easily calculate how much profit WFI would have enjoyed on the business of those clients had they stayed.

*King*, 2016 WL 299013, at *8. This Court's conclusions in *King* are equally true here. If Ms. Gonzalez has wrongly solicited any client away from Piper to Davidson (which Piper has not actually shown), or if she were to do so in the future, Piper could easily identify that client and quantify the lost revenue. With respect to the client Piper claims it has already lost, it does exactly that. (*See* Doc No. 14 at 12 (quantifying potential lost revenue).)

Piper undoubtedly knows, or can calculate, the projected revenue for its client, and any other clients it may claim to lose in the future. *See General Motors*, 563 F.3d at 319 (affirming denial of injunction based on "lost customer relationships" and finding such harm equivalent to claim for lost profits). Piper may not even need an expert witness to do so. *See, e.g., Hot Stuff Foods, LLC v. Houston Cas. Co.*, 771 F.3d 1071, 1078 (8th Cir. 2014) (permitting lay opinion testimony from plaintiff's CEO about "lost gross profit claims and … the method by which the amounts were calculated"). Piper knows the revenues it has historically derived from its client engagements, and thus, if these

relationships move because of Ms. Gonzalez's solicitation, Piper has the ability to point to such lost revenue.

**C. This Court Should Reject Piper's "Inference of Irreparable Harm" Argument**

Piper argues it need not provide actual evidence of irreparable harm because this Court can simply infer it based on Gonzalez's non-solicit restriction. Even putting aside that Gonzalez's restrictive covenants are unenforceable, Piper's characterization of the law is inaccurate.

Federal courts do not apply an inference of irreparable harm for breaches of restrictive covenants, as Piper argues. *See Moeschler v. Honkamp Krueger Fin Servs. Inc.*, 2021 U.S. Dist. LEXIS 179787 *34 (D. Minn. Sept. 21 2021) (the presumption of irreparable harm from breach of a covenant does not apply in federal court). There is no inference of irreparable harm available to Piper in this case, even assuming Piper could prove a breach of the Restraint.

**D. This Court Should Reject Piper's Contractual Stipulation Argument**

Piper also suggests that it need not provide actual evidence of irreparable harm because Ms. Gonzalez stipulated that a violation would cause irreparable harm. This argument also fails. While a stipulation of irreparable harm may be evidence of whether irreparable harm exists, it does not eliminate the need to establish irreparable harm. *Moeschler*, 2021 U.S. Dist. LEXIS 179787 *35; *Fulton v. Honkamp Krueger Fin. Servs. Inc.*, 2020 U.S. Dist. LEXIS 224505 *19 (D. Minn. 2020). The terms of the agreement do not demonstrate irreparable harm.

## II. APART FROM THE LACK OF IRREPARABLE HARM, THERE ARE ADDITIONAL REASONS TO DENY THE MOTION

Because they are extraordinary remedies, and a party seeking a preliminary injunction "bears the burden of establishing its entitlement to an injunction under the *Dataphase* factors." *Integrated Process Sols., Inc. v. Lanix LLC*, 2019 WL 1238835, at *3 (D. Minn.) (quotation omitted); *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 110 N.W.2d 348, 351 (Minn. 1961) ("Injunctive relief should be awarded only in clear cases, reasonably free from doubt."). This burden is "particularly heavy where, as here, the moving party seeks not to maintain the status quo, but to gain relief similar to that which it would obtain after a trial on the merits." *Gander Mountain Co. v. Cabela's, Inc.*, 2006 WL 2788184, at *2 (D. Minn.).

### A. This Court Should Not Enjoin "Solicitation

This Court should not grant Piper's request to enjoin Ms. Gonzalez from "solicitation" because: (1) enjoining "solicitation" does not provide a clear definition of what is enjoined; (2) Piper has not shown a likelihood of success on the merits that Ms. Gonzalez "solicited" clients withing the usual meaning of the word; and (3) Piper has no grounds to expand the contractual Restraint period beyond its language and the status quo to "90 days from the date of this Court's Order.

#### 1. Piper's Proposed Preliminary Injunction against "Solicitation" Should be Denied Because it Does Not Sufficiently Identify the Conduct to Be Restrained

The term "non-solicitation" is undefined in the Contract and the parties have a significant disagreement about what it means. Further, it refers to both "directly and

indirectly" soliciting and also "assisting" in solicitation. The *Merriam-Webster's Collegiate Dictionary* (11th ed.) defines the term "solicit" as "to make petition to." The *American Heritage Dictionary of the English Language* (4th ed.) defines "solicit" as "[t]o seek to obtain by persuasion, entreaty, or formal application." *See also, Total Quality, Inc. v. Fewless*, 985 N.W.2d 294, 303 (Mich. Ct. App. 2020).

Ms. Gonzalez submits that she has never "solicited" any of Piper's clients for Davidson. (Gonzalez Decl. ¶6). The entire basis of Piper's allegation that solicitation occurred comes from two incidents, the "*ULI Incident*" and the "*Aaron Incident*".

The *ULI Incident* involves Ms. Gonzalez's interaction at a ULI networking event. Ms. Gonzalez is the board chair of the Young Leaders Group ("YLG") of the non-profit organization, Urban Land Institute ("ULI"). (Gonzalez Decl. ¶6). Another member of the ULI, Jordan, happens to be an employee with Gardner Group ("Gardner"). Ms. Gonzalez understands Gardner to be a client of both Piper and Davidson. (*Id.)* During a ULI event hosted by Jordan, Scott MacMeekin ("MacMeekin") asked Ms. Gonzalez if Davidson could handle a CPACE project. (*Id.)* Ms. Gonzalez responded that she did not know but could find out and get back to him. (*Id.)* Ms. Gonzalez came back to MacMeekin to tell him that Davidson did not have enough information to answer the question. Then she handed the potential project off to others at Davidson for further handling. (*Id.)* Ms. Gonzalez did not petition, persuade, entreat, or make a formal application for Gardner's business. MacMeekin asked her about Davidson's capabilities, and she answered. Under the normal use of the word, Ms. Gonzalez did not "solicit" Gardner.

The *Aaron Incident* involves an exchange of pleasantries with Aaron Wade ("Aaron"). Ms. Gonzalez was in the Davidson office of Sam Elder ("Sam") during a phone call between Sam and Aaron. At the end of the call, Sam told Aaron that Ms. Gonzalez was now working with Davidson. Aaron and Ms. Gonzalez exchanged pleasantries. Based upon this exchange, Piper speculates to this Court that Ms. Gonzalez solicited the project Aaron and Sam discussed. In fact, Ms. Gonzalez was not involved in the project at all. (Gonzalez Decl. ¶9.)

Again, Ms. Gonzalez did not petition, persuade, entreat, or make a formal application for the business of the client being discussed. She was not involved in the proposal Davidson made to the client or in any aspect of pitching business to the client. She just happened to be in Sam's office during a phone call. Piper, however, makes this a basis of its Motion.

Rule 65 (d)(1)(C) of the Federal Rules of Civil Procedure requires that every injunction and restraining order must "Describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The Supreme Court has recognized that this is more than a technical requirement. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). The purpose of Rule 65(d)'s requirements is "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id*. The Supreme Court stated that "since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* Here, the relief sought by Piper is vague and

could create confusion about Ms. Gonzalez's ability to continue to provide services to Davidson clients. Piper did not bargain for a non-compete agreement or even a non-contact agreement from Ms. Gonzalez and Piper should not be allowed to expand the contractual obligations with vague, unclarified language in a preliminary injunction. *See Midwest Sign & Screen Printing Supply Co. v. Robert Dalpe & Laird Plastics, Inc.*, 386 F. Supp. 3d 1037, 1052 (D. Minn 2019) (recognizing that injunctions should be limited in scope necessary to protect the interests of the parties). This is particularly true when Ms. Gonzalez's right to earn a livelihood is being impacted. *See Bennett v. Storz Broad Co.*, 134 N.W.2d 892, 898 (Minn. 1965) (contract supporting an injunction is" looked upon with disfavor, cautiously considered and carefully scrutinized").

Further, the Contract is also vague and overly broad on what conduct it purports to cover. As drafted the Restraint states that Ms. Gonzalez cannot "indirectly . . . assist the solicitation of [Piper's] . . . clients or prospective clients with whom [Ms. Gonzalez] had any contact [with] in the twelve months preceding the termination of [her] employment." First, the restriction is vague as to what is prohibited—indirectly assisting someone else's soliciting. It appears Piper would argue this covers being in a room while someone else has a phone call. Would it also cover Ms. Gonzalez assisting in preparing an analysis used to land a new engagement with an existing Davidson client, if Ms. Gonzalez had also met that client at Piper cocktail reception? Second, the convoluted restriction does not protect any legitimate interest of Piper. Piper argues that the Restraint exists to protect its goodwill because "Gonzalez had contact with many current and prospective Piper clients." See DOC 14. Piper's Memorandum in Support at 19. But basing protection of goodwill based

on mere prior contact is not a recognized interest under Minnesota law. *See Bennett*, 134 N.W.2d at 899; *Midwest Sign & Screen Printing Supply Co.*, 386 F. Supp. 3d at 1056 (need to present evidence that defendant was "face" of the company in order to demonstrate need to protect goodwill). The tortured language used in the Restraint should not be invoked to prevent Ms. Gonzalez from engaging in conduct which creates no real threat to Piper's goodwill with its clients which could rise to the level of a protectible interest.

**2. Piper has not shown a likelihood of proving that Ms. Gonzalez has or that an injunction is necessary to preclude Ms. Gonzalez from "Soliciting" clients.**

Piper has not shown a likelihood of proving that Ms. Gonzalez has solicited clients. Piper also has not shown any threat that Ms. Gonzalez will solicit clients if an injunction is not entered. As discussed above, the two incidents (ULI and Aaron Incidents) do not support a likelihood of success on the merits or a need for an injunction.

**3 Even if a preliminary injunction against solicitation were appropriate (which it is not), Piper has Shown no basis for expanding the Restraint Time Period.**

Without explanation, Piper asks this Court not only to enjoin Ms. Gonzalez from "soliciting", but also asks that the injunction last longer than the Restraint provision of her Contract. The nonsolicitation Restraint period ends on September 20, 2023, ninety days after her resignation date.

**B This Court Should Not Enjoin the use of "Confidential Information" Without Excluding Information Received in Good Faith from Sources Other than Piper**

Upon her departure from Piper, Ms. Gonzalez printed information from Piper's systems (the "Printouts"). That was a mistake. Ms. Gonzalez denies that she has ever used

or disclosed any confidential information from Piper. Nor does she have any intention of doing so.

In the event that a preliminary injunction were granted prohibiting the disclosure or use of "confidential information," such an order such track the terms of the agreement.

The Restraint defines Confidential Information as including:

> "client lists or information, employee lists or information, information regarding product development, marking plans, management organization information, operating policies or manuals, performance results, business plans, financial records or other financial, commercial, business or technical information"

The Restraint excludes from Confidential Information:

> "information that became or becomes a matter of public record through no fault, act or omission of [Ms. Gonzalez's], or information developed by and/or already in your possession without confidential restrictions."

Any order should provide, that information is deemed to be a matter of public record when it comes to Ms. Gonzalez from sources that Ms. Gonzalez believes, in good faith, had a right to possess the information.

## III. PIPER'S REQUEST FOR A TURNOVER OF MS. GONZALEZ'S DEVICES IS OVERBROAD AND SHOULD BE REJECTED

Forensic examination of electronic devices is an extraordinary remedy. *Belcastro v. United Airlines, Inc.*, 2019 U.S. Dist. LEXIS 220317 *5 (N.D. Ill. December 23, 2019). The 2006 Advisory Committee Notes to Rule 34 of the Federal Rules of Civil Procedure provide:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34 (a) with regard to documents and electronically

> stored information **is not meant to create a routine right to a party's electronic information system**, although such access might be justified in some circumstances. **Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.**

*Fed R. Civ. P. 34*, Advisory Committee Notes-2006 Amendment (emphasis added). Here, the Motion simply seeks to require Ms. Gonzalez to turn over devices to Piper so that Piper can have a forensic examiner review the devices. There is no provision made for how to deal with the undoubtedly sensitive information belonging to Ms. Gonzalez which would reside on such devices. The broad request should be denied for that reason alone.

In addition, Piper has failed to provide any basis for demonstrating that the extraordinary expedited remedy is proportional to the needs of the case. *See Belcastro,* 2019 U.S. Dist. LEXIS 220317 at *6 (courts must take care to ensure that a request for forensic exam is proportional to the needs of the case). Piper has presented evidence that Ms. Gonzalez texted a picture of one screenshot to her personal phone. All of the other material which Piper claims was misappropriated was done through the printing of the documents. There is no indication that such documents were transmitted to any other electronic device. Piper should not be permitted to have unfettered access to Ms. Gonzalez's devices based on the evidence which it has presented to this Court. As noted, Ms. Gonzalez understands her obligation to preserve evidence and she will comply with properly framed discovery requests. The request for a turnover of all electronic devices pursuant as part of the expedited relief requested in the Motion for Temporary Restraining Order should be denied.

## CONCLUSION

This matter is before this Court for the purpose of preserving the status quo until the parties can proceed before a FINRA arbitration panel. There is no basis to find or infer that there is a threat of irreparable harm which requires the drastic relief sought. If Piper can demonstrate that it suffered monetary harm from the loss of revenue from clients, the FINRA arbitration panel can make such an award. This proceeding should not be used to grant Piper greater relief than it would be entitled to in a FINRA arbitration or allow Piper to engage in an intrusive and unnecessary fishing expedition with respect to information contained on Ms. Gonzalez's devices.

Ms. Gonzalez respectfully requests that Piper's Motion be denied in its entirety.

**NILAN JOHNSON LEWIS PA**

Dated: August 11, 2023

By: */s/ Daniel J. Supalla*
Joel Andersen (MN #352573)
Daniel J. Supalla (MN #0387064)
250 Marquette Avenue South, Suite 800
Minneapolis, Minnesota 55401
Telephone: (612) 305-7500
jandersen@nilanjohnson.com
dsupalla@nilanjohnson.com

and

**LAWRENCE KAMIN, LLC**

John S. Monical *pro hac vice pending*
Theodore E. Harman *pro hac vice pending*
300 S. Wacker Drive, Suite 500
Chicago, Illinois 60606
Telephone: (312) 924-4261
jmonical@lawrencekaminlaw.com
tharman@lawrencekaminlaw.com

**COUNSEL FOR DEFENDANT**