UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Piper Sandler & Co., | Case No. 0:23-CV-02281 (PJS-DTS) |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Constanza Gonzalez, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Piper Sandler & Co. ("Piper") brought this motion for temporary restraining order and preliminary injunction because Defendant Constanza "Connie" Gonzalez ("Gonzalez") has admitted to surreptitiously stealing Piper's highly confidential and highly sensitive documents and information. The evidence also shows that Gonzalez has begun using this stolen information to solicit Piper's clients and prospective clients in violation of Gonzalez's contract with Piper.

In opposition to Piper's motion, Gonzalez ignores that she got caught with her hand in the cookie jar and that she meticulously planned and then carried out her plan to sneak into Piper's office on a Saturday to take Piper's confidential information with her to a competitor a few days later. Indeed, Gonzalez's

opposition memorandum and declaration are essentially silent on the events leading up to her departure from Piper. She does nothing to rebut the detailed evidence set forth by Piper's forensic expert, Mark Lanterman, detailing Gonzalez's conniving conduct.

Instead, Gonzalez attempts to ignore this evidence by arguing Piper has only monetary damages and no irreparable harm, the term "solicit" is too confusing, it would be too burdensome for Gonzalez to turn over devices containing information Gonzalez stole from Piper, and Piper's requested relief is beyond the status quo. In essence, Gonzalez asks this Court to turn a blind eye to her breaches of the restrictive covenants she agreed to with Piper.

However, Piper has suffered and will continue to suffer irreparable harm if the proposed injunctive relief is not granted. The harm is not theoretical. It is not that Gonzalez could violate the confidentiality provision; rather, Gonzalez admits to having violated the confidentiality provision, and the facts show that additional violations will occur if the injunctive relief is not granted. Likewise, it is not that Gonzalez could violate the non-solicitation provision; rather, Gonzalez already has violated the non-solicitation provision. While Piper will certainly seek monetary damages in the FINRA proceeding, monetary damages resulting from this misconduct will be difficult if not impossible to quantify which is why injunctive relief is necessary at this stage.

The specific injunctive relief requested will preserve the status quo and prevent Piper from suffering additional irreparable harm while the case proceeds. Enjoining Gonzalez from soliciting Piper's clients and prospective clients is simply enforcing the restrictive covenant that Gonzalez already agreed to with Piper. The injunction should be effective 90 days from the Court's Order because Gonzalez has failed to abide by the agreement to date. Enjoining Gonzalez from disclosing, using, or misappropriating Piper's confidential information is also simply enforcing the restrictive covenant that Gonzalez already agreed to with Piper. And requiring Gonzalez to provide the devices that likely contain the confidential information in order to remove the information simply places the parties in the same position they would have been in had Gonzalez not breached the agreement. The requested relief is not overbroad. It is necessary to protect Piper as a result of Gonzalez's misconduct.

## ARGUMENT

I.  **PIPER HAS SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM IF THE PROPOSED INJUNCTIVE RELIEF IS NOT GRANTED.**

Gonzalez's breaches of the confidentiality and non-solicitation provisions in her agreement with Piper have caused Piper irreparable harm. If Gonzalez is not enjoined from further breaching the agreement, then Piper will continue to suffer irreparable harm. Gonzalez's actions have caused and will cause Piper to

lose the value of its confidential information and client relationships. Gonzalez should be enjoined from breaching her restrictive covenants.

### A.  Piper has and will continue to suffer irreparable harm resulting from Defendant's breaches of the confidentiality provision.

Piper will suffer irreparable harm if Gonzalez is not enjoined from disclosing, using, or misappropriating Piper's confidential information. The harm is not theoretical, because Gonzalez has admitted to stealing Piper's confidential information. And as highlighted in Piper's opening memorandum, the information that Gonzalez stole from Piper includes highly sensitive business information[1] that was developed through proprietary data analysis across multiple markets. (Bishop Decl. at ¶ 8.) Indeed, it took "thousands of hours to compile the information and data included in the confidential documents that Gonzalez" stole. (*Id.* at ¶ 10.) "Having this kind of information out in the world creates a harm that is difficult to quantify." *Prairie Field Servs., LLC v. Welsh*, 497

---

[1] In a footnote, Defendant attempts to minimize the harm Defendant caused by saying that some of the information was public data, template forms, and personal documents. (*See* Def.'s Mem. Opp. TRO at 4 n.1.) This footnote makes no mention of the harm Defendant caused when she took the business development tracking summaries, client presentations, and specific financial modeling plans including plans for projects and clients for which Defendant had no involvement. (*See* Piper Mem. Sup. TRO at 10 (citing (Lanterman Decl. at ¶ 35; Becker Decl. at ¶ 8; Bishop Decl. at ¶¶ 8-10).) Yet, in her declaration, Defendant said she "did not realize that printing the documents was a problem." (*See* Gonzalez Decl. ¶ 5.) Defendant's explanation defies logic and common sense.

F. Supp. 3d 381, 404 (D. Minn. 2020) (finding irreparable harm from losing control of a company's confidential information); *see CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 817 (D. Minn. 2018) ("[I]t is difficult, if not impossible, to quantify the monetary harm that sharing this kind of information caused or will cause CPI."). Indeed, because the information is highly sensitive and valuable, losing the confidential nature of information alone is enough to support finding irreparable harm. *See Paisley Park Enterprises, Inc. v. Boxill*, 253 F. Supp. 3d 1037, 1049 (D. Minn. 2017) ("[T]he disclosure of confidential information can constitute an irreparable harm because such information, once disclosed, loses its confidential nature" (quoting *Hosp. Staffing Sols., LLC v. Reyes*, 736 F.Supp.2d 192, 200 (D.D.C. 2010))).

The value of confidential information and the difficulty of quantifying damages resulting from the misappropriation of confidential information is why courts routinely find irreparable harm when there is a risk of disclosure, let alone admitted misappropriation. *See, e.g.*, *Mod. Controls, Inc. v. Andreadakis*, 578 F.2d 1264, 1270 (8th Cir. 1978) ("The possible disclosure of trade secrets and confidential information is certainly relevant in determining the potential harm to an employer.") (finding that former employer will suffer irreparable harm because former employee would disclose confidential information to a competitor); *Marvin Lumber & Cedar Co. v. Severson*, 2015 WL 5719502, at *7 (D.

5

Minn. Sept. 28, 2015) (recommending "enjoining Defendant from using and/or disclosing any trade secret or confidential information Defendant acquired as a result of his employment with Plaintiff; and, through August 13, 2016, directly or indirectly soliciting business from Marvin's dealers or Marvin's dealers' customers with whom Severson worked during his employment at Marvin."); *Equus Computer Sys., Inc. v. N. Computer Sys., Inc.*, 2001 WL 1636487, at *4 (D. Minn. May 4, 2001) ("If the proprietary information at issue is used inappropriately, then Plaintiff could lose valuable customers, both long-standing and potential, and contract opportunities."); *Minnesota Min. & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 338 (D. Minn. 1980) ("The confidential information possessed by Kirkevold is of a sensitive nature and provides 3M with an advantage over its magnetic media competitors. … [T]he Court has determined that 3M has established a realistic threat of disclosure and use of its confidential information by virtue of Kirkevold's employment at Verbatim. Consequently, the plaintiff has made the requisite clear showing of possible irreparable injury."); *Creative Commc'ns Consultants, Inc. v. Gaylord*, 403 N.W.2d 654, 657 (Minn. Ct. App. 1987) ("The trial court did not abuse its discretion by finding irreparable harm in CCC's loss of clients and the threat that Gaylord would disclose confidential information.").

Tellingly, Gonzalez does not even address the irreparable harm Piper has suffered and will continue to suffer as a result of her violations of the confidentiality provision. (*See generally* Def.'s Opp. Mem.) Gonzalez has admitted to stealing Piper's confidential information. (Gonzalez Decl. at ¶ 5; Def.'s Opp. Mem. at 14.) The facts further show that Piper's confidential information has been disclosed and/or used to compete against Piper. (Becker Decl. at ¶¶ 10, 12.) Gonzalez's assertion that she has not used Piper's information rings hollow and is insufficient to negate the harm to Piper. *See Minnesota Min. & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324, 337 (D. Minn. 1980) ("[A] claimed intention not to disclose or receive confidential information was insufficient to negate the realistic threat of disclosure and the possibility of irreparable harm." (citing *Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264 (8th Cir. 1978))).

Because of Gonzalez's existing and continued violations of the confidentiality provision and the resulting irreparable harm to Piper, the Court should grant Piper's requested injunction.

### B. Piper has suffered and will continue to suffer irreparable harm resulting from Defendant's breaches of the non-solicitation provision.

Piper will also suffer irreparable harm if Gonzalez is not enjoined from soliciting any Piper client or potential client with whom Gonzalez had contact

7

within the last 12 months of her employment at Piper. Similar to the breaches of the confidentiality provision, the harm resulting from Gonzalez's breaches of the non-solicitation provision is not theoretical; the facts show that Gonzalez has breached the provision. Gonzalez's arguments against injunctive relief relating to solicitation misstate the law and the facts.

The breach of a non-solicitation agreement strongly supports finding irreparable harm. Contrary to Gonzalez's contention that Piper can easily calculate its damages, damages stemming from a breach of a non-solicitation provision can be difficult, if not impossible, to quantify. *See Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085, 1092 (D. Minn. 1981), *aff'd*, 684 F.2d 565 (8th Cir. 1982) ("It would be difficult to calculate the sales Medtronic may lose in the course of a year, and extremely difficult or impossible to calculate all of the sales Medtronic may continue to lose in the future."); *see also Webb Pub. Co. v. Fosshage*, 426 N.W.2d 445, 449 (Minn. Ct. App. 1988) (discussing irreparable harm resulting from solicitation of customers and finding that "the damage to its business reputation in that area would be substantial and not easily measured").

Indeed, due to the difficulty in quantifying the damages stemming from a breach of a non-solicitation provision, courts routinely find irreparable harm and grant preliminary injunctions. *See Mobile Mini, Inc. v. Vevea*, 2017 WL 3172712, at *7 (D. Minn. July 25, 2017) ("Vevea's past breaches and threatened future

breaches of the Agreement's non-solicitation provision pose a danger of irreparable harm to Mobile Mini in the form of lost future customers and loss of goodwill and reputation."); *see, e.g.*, *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 818 (D. Minn. 2018) (finding irreparable relating to non-solicitation because employee's responsibilities "included managing client relationships, prospecting new clients and customers, as well as heavy involvement in production and servicing of accounts"); *Lawson Prod., Inc. v. Anderson*, 2013 WL 1345499, at *3 (D. Minn. Apr. 2, 2013) ("Based on Anderson's, Roy's, and Winter's ongoing breaches of their non-solicitation agreements, the Court concludes that Lawson has demonstrated a threat of irreparable harm absent injunctive relief."); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1273 (N.D. Iowa 1995) ("[I]t was undisputed that Youngblade had access to confidential client information while he was employed at Curtis 1000.  Obviously, use of this knowledge would enable him to effectively solicit Curtis 1000's customers, and to undercut Curtis 1000's rates while providing virtually the same materials and products provided by Curtis 1000.").

Gonzalez also claims that Piper cannot suffer irreparable harm because she was not the face of the company.  (Def.'s Opp. Mem. at 6-8, 14.)  However, Gonzalez does not need to be the face of the company in order to breach her contract with Piper.  Gonzalez agreed not to solicit Piper's clients and

9

prospective clients for a short period of time.  (Paterson Decl. Ex. 1.)  The contract makes no mention of the "importance" of her role with respect to that solicitation.

Moreover, the law does not require Gonzalez to be the face of Piper in order to find irreparable harm stemming from her improper solicitation of Piper's clients.  Indeed, *Dalpe* does not support Gonzalez's argument.  (Def.'s Mem at 14 (citing *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1056 (D. Minn. 2019)).)  Instead, *Dalpe*, consistent with well-established case law discusses the depth of the employee's interactions with customers in order to determine the extent of any possible irreparable harm.  *See Dwyer*, 294 F. Supp. 3d at 818.

Here, the facts show that Gonzalez was very involved in customer relationships.  Gonzalez's job responsibilities included "business development, researching potential projects and clients, … [and] meeting with clients and prospective clients."  (Bishop Decl. at ¶ 4.)  "Gonzalez was highly exposed to Piper's clients and prospective clients . . ." (*Id.*)  Moreover, Piper and Davidson are the two biggest players in the Utah market, meaning Gonzalez is even more likely to be able to utilize the client relationships she forged at Piper to solicit Piper's customers and potential customers.  (Becker Decl. at ¶ 2.)  Put simply, Gonzalez was responsible for—and did—create customer relationships and

maintain the customer goodwill that is critical to Piper's business. (Bishop Decl. at ¶ 2.) Tellingly, a potential customer connected with Gonzalez after she joined Davidson, and she was able to use her relationship to solicit the customer's business. (Def.'s Opp. Mem. at 11.)

The facts further show that not only is there a threat of Gonzalez soliciting Piper's clients, but Gonzalez already has solicited Piper's clients. In her opposition memorandum, Gonzalez admits that she communicated with a potential client regarding Davidson providing services to the client—the "ULI Incident." (Def.'s Opp. Mem. at 11.) That is solicitation under her agreement with Piper. (Paterson Decl. Ex. 1.)

More importantly, Gonzalez claims ignorance of her other solicitation efforts along with the fact that she used Piper's confidential information as part of her solicitation. The "ULI Incident" described in Gonzalez's declaration does not address the solicitation that was referenced in Becker's Declaration. (*See* Gonzalez Decl. ¶ 6.) That is, while Gonzalez admits to soliciting one client (Gardner) at the event, she ignores her solicitation of a separate client (Marlin Eldred) at the event altogether. (Supplemental Declaration of Benjamin Becker, dated Aug. 15, 2023 ("Suppl. Benj. Decl.") at ¶ 3.) At the event, Ms. Gonzalez spoke with Marlin Eldred, Economic Development Director for Lehi City. Mr. Eldred is a current client of Piper, and Ms. Gonzalez had contact with Mr. Eldred

11

and Lehi City in the last year of her employment with Piper. (*Id.*) During the conversation, Ms. Gonzalez expressed her desire to Mr. Eldred that he work with Davidson. The following day, June 29, 2023, Mr. Eldred called Piper to relay the details of the conversation he had with Ms. Gonzalez. (*Id.*) That is textbook solicitation.

In addition to the networking event, Piper detailed two other incidents where potential clients contacted Piper a few days after Gonzalez joined Davidson to say that the client was now considering using Davidson and that Davidson had access to Piper's confidential information. (Becker Decl. at ¶ 10, 12.) Importantly, Gonzalez had been in contact with at least one of these clients prior to leaving Piper, and Gonzalez stole Piper's confidential information relating to at least one of those clients when she resigned. (*Id.*) Piper lost one of these clients after Gonzalez joined Davidson. (*Id.* at ¶ 12.) Again, it is not just that Gonzalez is soliciting Piper's clients, but that she is doing so with the support of Piper's confidential information. This misconduct supports injunctive relief.

Because of Gonzalez's existing and threatened violations of the non-solicitation provision and the resulting irreparable harm to Piper, the Court should grant Piper's requested injunction.

## II. THE COURT SHOULD REJECT DEFENDANT'S OTHER ARGUMENTS AGAINST INJUNCTIVE RELIEF.

### A. The non-solicitation provision—and requested injunctive relief—is enforceable as a matter of law.

As part of her last-ditch effort to avoid the misconduct she has committed and Piper's right to injunctive relief, Gonzalez claims the non-solicitation provision is unenforceable altogether. (Def. Mem. at 9-13.) In short, Gonzalez claims that because "solicit" is not defined in her agreement, the provision is unenforceable and any injunction enforcing the provision would be invalid. The Court should reject Gonzalez's argument.

"Solicit" not being a defined term under the agreement is not a basis to find the provision or Piper's requested injunctive unenforceable. Tellingly, Gonzalez does not cite to a single case in which an injunction is denied on the grounds of not defining "solicit." Indeed, "'[s]olicit' has a reasonably definite plain English meaning." *Minnesota League of Credit Unions v. Minnesota Dep't of Com.*, 467 N.W.2d 42, 46 (Minn. Ct. App. 1991), *aff'd*, 486 N.W.2d 399 (Minn. 1992); *see* SOLICITATION, Black's Law Dictionary (11th ed. 2019) ("The act or an instance of requesting or seeking to obtain something; a request or petition") ("An attempt or effort to gain business"). When dealing with non-solicitation provisions, courts commonly look to dictionary definitions to guide the analysis. *See, e.g., The Hays Group, Inc. v. BerganKDV Wealth Management LLC*, 2019 WL

13

1422429, at *12 (Minn. Dist. Ct. Mar. 21, 2019) ("Based on these definitions of the word "solicit," which are consistent across multiple dictionaries, the Court finds that solicitation includes negotiating, to the extent that an actor is attempting or making an effort through negotiation to obtain business through persuasion, entreaty, request, application or petition."); *St. Jude Medical S.C., Inc. v. Barooah*, 2014 WL 7232193, at *4 (Minn. Dist. Ct. Oct. 16, 2014) (enforcing non-solicitation provision that did not define "solicit"). Put simply, the Court—based on the ordinary meaning of the word—can enjoin Gonzalez from soliciting Piper's clients and prospective clients.

Importantly, Piper is merely seeking to enforce the non-solicitation provision that Gonzalez already agreed to with Piper. Gonzalez's Offer Letter states:

> For ninety days following the termination of your employment for any reason, you agree that you will not directly or indirectly, solicit or assist in the solicitation of Piper Sandler's investment banking or capital market clients or prospective clients with whom you have had any contact in the twelve months preceding the termination of your employment.

(Paterson Decl. Ex. 1.)

Piper's Proposed Order reflects the same terms[2]:

> The Court should enter a TRO, followed by a preliminary injunction:

---

[2] Piper addresses the 90 days from termination of employment versus 90 days from the Court's Order below.

14

1.   Enjoining Defendant Connie Gonzalez, for 90 days from the date of the Court's Order, from soliciting any Piper client or potential client with whom Gonzalez had contact within the last 12 months of her employment at Piper

The Court should grant the requested relief because in doing so the Court is merely enforcing the provision that Gonzalez already agreed to with Piper. *See Thermorama, Inc. v. Buckwold*, 125 N.W.2d 844, 845 (Minn. 1964) ("If defendant has not breached the terms of his agreement, he suffers little detriment by the issuance of the injunction. On the other hand, if he is in violation, plaintiff may well lose a number of customers for whom it has not had a fair opportunity to compete, and may forfeit as well future benefits which are difficult to evaluate."); *see also Mobile Mini, Inc. v. Vevea*, 2017 WL 3172712, at *7 (D. Minn. July 25, 2017) ("[T]he potential irreparable harm to Mobile Mini in the event that Vevea is permitted to solicit Company Customers before the expiration of the non-solicitation provision is not insignificant."). In other words, the Court would simply be maintaining the status quo.

**B.   The Court should enforce the restrictive covenants starting from the date of the Court's Order.**

Piper has requested that Gonzalez be enjoined from soliciting Piper's clients and prospective clients for 90 days starting from the date of the Court's Order. In response, Gonzalez argues that there is no basis to expand the non-

15

solicitation period whatsoever. (Def.'s Opp. Mem. at 14.) Gonzalez's argument ignores her misconduct and this Court's equitable authority.

This Court has the authority to determine the terms of the preliminary injunction. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 n. 8 (8th Cir. 1981) ("We consistently have held that the grant of preliminary relief is within the discretion of the district court."). Consistent with this equitable authority, the Court can enforce the non-solicitation provision from the date of the Court's Order rather than the date provided in the agreement.[3] *See Medtronic, Inc. v. Doerr*, 2015 WL 506768, at *6 (Minn. Ct. App. Feb. 9, 2015) ("Finally, even if the tolling provision was applicable, the district court had discretion in fashioning an equitable remedy."); *see also Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1241 (11th Cir. 2009) (affirming district "using Gordon's breach as a basis to toll the six-month restrictive period and to enjoin prospectively Gordon from working for Highland"); *Oxford Glob. Res., Inc. v. Weekley-Cessnun*, 2005 WL 350580, at *7 (N.D. Tex. Feb. 8, 2005) (tolling non-solicitation period for any

---

[3] Piper acknowledges this Court's previous analysis on this issue, including whether the employment agreement expressly contemplates tolling the applicable covenant. *U.S. Water Servs., Inc. v. Watertech of Am., Inc.*, 2013 WL 5503725, at *1 (D. Minn. Oct. 3, 2013). Still, Piper contends that enforcing the non-solicitation provision from the date of the Court's Order is appropriate in light of Defendant's conduct, particularly when tolling the provision will only result in an approximate 60-day extension.

16

period that defendant was in violation of the covenant). The purpose of tolling the covenant is to give Piper the benefit of the bargain in light of Gonzalez's breaches. *See Just Funky, LLC v. Boom Trendz, LLC*, 2023 WL 272321, at *3 (N.D. Ohio Jan. 18, 2023) ("[T]he Court may equitably toll the time period of the prohibition within the restrictive covenant in order to afford an employer "the benefit of its bargain" with its employee.").

Here, Gonzalez breached the confidentiality covenant when she stole Piper's confidential information. Immediately upon joining Davidson, Gonzalez then not only continued violating her confidentiality covenant but also began violating her non-solicitation covenant as well. (Becker Decl. at ¶¶ 8-13.) With its equitable authority, the Court should enforce the non-solicitation provision from the date of the Court's Order to address Gonzalez's violations of the non-solicitation provision to date.

### III.  PIPER'S REQUESTED RELIEF, INCLUDING OBTAINING DEFENDANT'S DEVICES IS NECESSARY TO PRESERVE THE STATUS QUO.

Piper has requested that the Court order Gonzalez to turn over all of her devices to Piper for forensic analysis in order to maintain the status quo. As a reminder, prior to Gonzalez stealing Piper's confidential information, the status quo was that Piper's information was confidential and Piper's competitors could not use it.

Now, however, the facts show that Gonzalez stole Piper's confidential information and that immediately after Gonzalez joined Davidson, Davidson all of a sudden had access to Piper's confidential information. (*See generally* Lanterman Decl.; Becker Decl. ¶¶ 10, 12; Bishop Decl. at ¶¶ 8-10.) Piper needs to forensically analyze and scrub the devices in order to return to the status quo.

In opposition to Piper's reasonable request, Gonzalez, applying Rule 34, argues that the request is an extreme remedy that should not be granted. (Def. Opp. Mem. at 15-16.) First and foremost, Rule 34 does not apply here. Rule 34 applies to discovery requests and a party's obligations in producing documents. Rule 65 applies to preliminary injunctions, and as mentioned above, the Court has the equitable authority to grant injunctive relief that is appropriate under the circumstances. Gonzalez's argument also misses the most obvious point— Gonzalez is not supposed to have any confidential Piper information in her possession, custody, or control. This is not, as in the case of discovery, where a party can produce relevant documents without the opposing side having access to the party's electronic system. Again, Gonzalez admits that she stole Piper's confidential information, and the facts show that Piper's confidential information was disclosed to Davidson.[4] It is not reasonable to now rely on Gonzalez's

---

[4] To be clear, right now, Piper is asking the Court to order Defendant to turn over devices she has used during her employment with Piper and Davidson to find

18

assurances that she will locate and return Piper's confidential information. Indeed, the forensic analysis conducted by Piper proved that Gonzalez stole information that she did not tell Piper about even after she had been caught. (Lanterman Decl. at ¶¶ 19-24.)

Piper's request is the only way to ensure that the parties can return to the status quo.  All of Gonzalez's devices will be provided to a forensic expert, searches will be conducted to identify Piper's confidential information, and the information will be removed from the devices.  This is not overbroad or extreme. It is the appropriate remediation under the circumstances.

## **CONCLUSION**

Defendant's opposition does nothing to overcome the facts and law supporting injunctive relief.  The Court should grant Piper's motion in order to preserve the status quo while the case continues in FINRA.

---

out what Piper information is on those devices and to scrub them of Piper's information.

|  |  |  |
|---|---|---|
|  | | **ANTHONY OSTLUND LOUWAGIE DRESSEN & BOYLAN P.A.** |
| Dated:  August 15, 2023 | By: | *s/ Joseph W. Anthony* |

Joseph W. Anthony (#0002872)
janthony@anthonyostlund.com
Peter J. McElligott (#397578)
pmcelligott@anthonyostlund.com
William R. Paterson (#401045)
wpaterson@anthonyostlund.com
90 South 7th Street
3600 Wells Fargo Center
Minneapolis, MN  55402
Telephone:  612-349-6969

**ATTORNEYS FOR PLAINTIFF**