UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PIPER SANDLER & CO.,

        Plaintiff,

v.

CONSTANZA GONZALEZ,

        Defendant.

Case No. 23-CV-2281 (PJS/DTS)

ORDER

Peter McElligott, Joseph W. Anthony, and William R. Paterson, ANTHONY OSTLUND BAER & LOUWAGIE, P.A., for plaintiff.

John Scott Monical and Theodore Eric Harman, LAWRENCE KAMIN LLC, and Daniel J. Supalla and Joel Andersen, NILAN JOHNSON LEWIS P.A., for defendant.

Defendant Constanza Gonzalez worked as a Public Finance Investment Banking Associate for plaintiff Piper Sandler & Co. ("Piper"). In June 2023, Gonzalez left Piper to join D.A. Davidson Companies ("Davidson"), one of Piper's competitors. Shortly after Gonzalez joined Davidson, Piper filed this lawsuit, alleging that Gonzalez stole confidential information and solicited Piper's clients for Davidson in violation of restrictive covenants in Gonzalez's employment agreement with Piper. To prevent any future violations of those covenants, Piper now seeks a preliminary injunction. ECF

No. 5.[1]  The Court held a hearing on Piper's motion on August 21, 2023.  For the reasons explained below, Piper's motion is granted in part and denied in part.[2]

ANALYSIS

Piper asks the Court to (1) enjoin Gonzalez from soliciting Piper's clients or potential clients; (2) enjoin Gonzalez from disclosing, using, or misappropriating Piper's confidential information; and (3) order Gonzalez to turn over "all devices she has used from the start of her employment with Piper . . . to the present" so Piper can confirm that none of its confidential information remains on the devices.  Compl. at 15–16.  In determining whether to grant Piper's motion, the Court considers four factors: (1) Piper's likelihood of success on the merits; (2) the threat of irreparable harm to Piper if the injunction is not granted; (3) the balance between this harm and the injury that granting the injunction will inflict on Gonzalez; and (4) the public interest.  *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  "The likelihood of success on the merits is the most important of the *Dataphase* factors."  *Craig v. Simon*, 980 F.3d 614,

---

[1]Piper's motion is styled as a motion for a temporary restraining order.  The Court treats Piper's motion as one for a preliminary injunction, however, because Gonzalez received notice of the motion, both sides have had a full opportunity to submit briefs and supporting materials, and the Court held oral argument on the motion.  *See* Fed. R. Civ. P. 65; *see also Wilmington Tr., N.A. v. Nelson*, No. 18-CV-3299 (PJS/DTS), 2018 WL 6819335, at *1 n.1 (D. Minn. Dec. 28, 2018).

[2]Because the facts of this case are familiar to the parties, and time is of the essence, the Court will not restate the facts here.

617 (8th Cir. 2020) (cleaned up).  Preliminary injunctions are extraordinary remedies, and Piper bears the burden of establishing its entitlement to such relief.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### A. Non-Solicitation Agreement

The Court denies Piper's motion with respect to an injunction prohibiting Gonzalez from soliciting clients or potential clients.

First, Piper has not shown that it is likely to succeed on the merits of its claim that Gonzalez breached the non-solicitation clause of her employment agreement.[3] Piper provided the Court with only three examples of Gonzalez's alleged solicitation of Piper clients after she joined Davidson.  With respect to the first—the "Aaron incident"— Piper conceded at the hearing that the incident did not involve solicitation.  The second—the "MacMeekin incident"—did not involve Gonzalez soliciting a client because the client sought out Gonzalez, not vice-versa.  *See* Aug. 11 Gonzalez Decl. ¶ 6.  As the Court has explained previously, "the great weight of authority" supports the view that solicitation does not occur where a client initiates contact with the defendant.

---

[3]Gonzalez argues that she should not be enjoined from soliciting Piper's clients because "solicitation" is not clearly defined in the employment agreement.  *See* Def. Memo. Opp. at 10.  But "solicitation" is not a vague term.  *See Minnesota League of Credit Unions v. Minnesota Dep't of Com.*, 467 N.W.2d 42, 46 (Minn. Ct. App. 1991) ("'Solicit' has a reasonably definite plain English meaning."), *aff'd*, 486 N.W.2d 399 (Minn. 1992).  It may on occasion be difficult to determine whether a particular encounter involved "solicitation," but this is not such an occasion.

*See Honeywell Int'l Inc. v. Stacey*, No. 13-CV-3056 (PJS/JJK), 2013 WL 9851104, at *8 (D. Minn. Dec. 11, 2013). The third example—the "Eldred incident"—is the only episode that might have breached the non-solicitation agreement. However, the information in the record about the incident is vague and contradictory. *Compare* Supp. Becker Decl., *with* Aug. 16 Gonzalez Decl. And even if the Court were to determine that the Eldred incident constituted solicitation, that solicitation was a rather minor breach of the restrictive covenant. *See* Supp. Becker Decl. ¶ 3 ("During the conversation, Ms. Gonzalez expressed her desire to Mr. Eldred that he will work with Davidson."). Therefore, the Court is skeptical that Piper has a "fair chance of prevailing" on its claim that Gonzalez violated the non-solicitation clause. *See Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022).

Second, even if Piper had shown a likelihood of success on its claim, Piper has not established a threat of irreparable harm. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Here, the only harm Piper will potentially suffer as a result of Gonzalez's alleged breach of her non-solicitation agreement is the loss of clients and the profits those clients' projects might generate. *Cf. Wells Fargo Ins. Servs. USA, Inc. v. King*, No. 15-CV-4378 (PJS/JJK), 2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016) ("[T]his case is

about money.  No historic building is going to be destroyed.  No toxins are going to be released into the environment.  No ship is going to leave port, never to return.").  "By definition, lost profits are 'reparable' through money damages."  *Id.*

Piper argues that whether it will suffer actual harm is essentially irrelevant because Minnesota law creates an inference that "a company is irreparably harmed when a former employee breaches their non-solicitation . . . agreement" and "Gonzalez already agreed that her violations would cause irreparable harm."  Pl. Memo. Supp. at 17, 20.  But this Court has previously explained why the inference of harm that applies in Minnesota *state* courts does not apply in *federal* court.  *See Moeschler v. Honkamp Krueger Fin. Servs., Inc.*, No. 21-CV-0416 (PJS/DTS), 2021 WL 4273481, at *9–10 (D. Minn. Sept. 21, 2021); *Fulton v. Honkamp Krueger Fin. Servs., Inc.*, No. 20-CV-1063 (PJS/DTS), 2020 WL 7041766, at *12 (D. Minn. Dec. 1, 2020).  And while a contractual stipulation "may be evidence of whether irreparable harm exists," it "cannot eliminate the need to establish [actual] irreparable harm."  *Moeschler*, 2021 WL 4273481, at *13.

### B. Confidentiality Agreement

Although the Court declines to enter an injunction enforcing the non-solicitation provision of the parties' agreement, the Court grants Piper's motion with respect to the confidentiality provision.

First, Piper is virtually certain to succeed on the merits of its claim that Gonzalez breached the confidentiality clause of the employment agreement. Gonzalez pretty much admits that she took confidential information in breach of the clause. *See* Def. Memo. Opp. at 14 ("Upon her departure from Piper, Ms. Gonzalez printed information from Piper's systems . . . . That was a mistake."); *see also* Aug. 11 Gonzalez Decl. ¶ 5 (admitting she printed documents).

Second, Piper is likely to suffer irreparable harm as a result of Gonzalez's theft of the confidential information. While Gonzalez denies that she intended to use the information she took, she has not credibly explained why she would come to the (closed) office on the Saturday before she departed to print out information that she did *not* intend to use. That makes no sense. Gonzalez also alleges that she "did not realize printing the documents was a problem." Aug. 11 Gonzalez Decl. ¶ 5. That, too, is hard to believe, given the steps that Gonzalez took to cover her tracks. *See* Lanterman Decl. ¶¶ 36–41, 46–47 (describing how Gonzalez printed documents outside of business hours—on a Saturday morning—and afterward changed the name of more than one thousand files on her Piper-issued laptop). Gonzalez does not appear to be a terribly credible affiant, and thus the Court does not fault Piper for refusing to take Gonzalez at her word that she no longer possesses any confidential information. Moreover, if Gonzalez (or Davidson) used confidential information, it would be difficult (if not

impossible) for Piper to discover that use or trace the extent of any harm caused by that use. *See Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 404 (D. Minn. 2020) ("Having this kind of information out in the world creates a harm that is difficult to quantify."). Finally, when she accepted Piper's offer of employment, Gonzalez agreed that her failure to comply with the confidentiality agreement would cause Piper "irreparable injury." *See* Compl. Ex. 1. As the Court explained above, this contractual stipulation is not sufficient to establish irreparable harm, but it is nevertheless evidence that such harm exists. *See Moeschler*, 2021 WL 4273481, at *13.

Finally, the balance of harms and public interest weigh in Piper's favor. The injunction does nothing more than prohibit Gonzalez from doing what she has already agreed not to do, so she will not be harmed by it. And because the public interest favors "the protection of legitimate business interests in an industry propelled by vigorous but fair competition," the public interest will be vindicated by enforcing the confidentiality agreement. *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 819 (D. Minn. 2018) (quotations omitted).

### C. Device Inspection

Lastly, the Court will not order Gonzalez to turn over all of the devices she has used since the beginning of her employment with Piper, for two reasons: The first is that the Court does not appear to have the authority to order Gonzalez to turn over her

Davidson-issued devices, as those devices are owned by Davidson, and Davidson is not a party to this case. The second is that the Financial Industry Regulatory Authority ("FINRA") will be in a better position to decide how to proceed with the discovery of information stored on Gonzalez's personal devices. Therefore, the Court will leave it to FINRA to determine whether and to what extent Piper may search Gonzalez's devices.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff Piper's motion for a temporary restraining order [ECF No. 5] is GRANTED IN PART and DENIED IN PART, as follows:

    a. Defendant Gonzalez is enjoined from copying, disclosing, divulging, publishing, or using any "Confidential Information," as that term is defined in her employment agreement with Piper [ECF No. 4 at 4].

    b. Piper's motion is denied in all other respects.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 23, 2023            s/Patrick J. Schiltz
                                  Patrick J. Schiltz, Chief Judge
                                  United States District Court